## McCRAY REFRIGERATOR SALES CORPORATION v. JOHNSON et al.*

### No. 12631.

Court of Civil Appeals of Texas. Dallas.

Oct. 22, 1938.

Malone, Lipscomb, White & Seay and George E. Seay, all of Dallas, for appellant.

White & Yarborough, of Dallas, for appellees.

YOUNG, Justice.

Appellant, as plaintiff in the trial court, sued L. A. Langston and son, A. W. Langston, for the contract price of a refrigerator case and equipment delivered to the Langston Grocery Store in Wright City,

*Rehearing denied Nov. 26, 1938.

Rusk County; alleging generally that, though the transaction was consummated with A. W. Langston, who signed all instruments involved in the purchase, yet the latter was acting on behalf of L. A. Langston as agent for an undisclosed principal. There were further allegations by plaintiff of apparent authority in the son to bind L. A. Langston in said transaction. The papers signed by A. W. Langston evidencing the purchase, including a chattel mortgage on the equipment described therein, the terms being $50 down, balance in monthly installments until the entire amount of $609 was paid. After several monthly payments and about six months later, the refrigerator and equipment involved were destroyed by fire while on the premises of defendants, and the Texas State Mutual Fire Insurance Company, through its receiver, Leland M. Johnson, was made a party to the suit by reason of a fire policy covering the property in question; the latter party, however, going out of the case on peremptory instruction at the close of testimony, and no complaint is here made of this action of the trial court. Plaintiff further plead in the alternative for judgment against A. W. Langston; and its trial amendment alleged a liability against both the Langstons, as partners. The answer of the younger Langston sought to avoid the contract by reason of alleged fraudulent representations; the answer of L. A. Langston denying agency of the son to act for him as to the transaction; or that he was bound under the written contract or otherwise to pay for said equipment. By supplemental petition, plaintiff McCray Refrigerator Company alleged facts constituting ratification and estoppel as to L. A. Langston.

Upon a jury trial and special issues submitted, the jury found in substance that, (1) A. W. Langston was authorized by L. A. Langston to sign the contract in question on behalf of and for the defendant L. A. Langston. (2) The equipment described in the contract was purchased by A. W. Langston for and on behalf of L. A. Langston. (3) After such equipment was, delivered to the Langstons' store in Wright City, Texas, the defendant L. A. Langston approved the purchase. (4) After the equipment was delivered to the Langstons' store in Wright City, Texas, A. W. Langston acquiesced in the terms and contents of the said written contract. (5) Plaintiff's agent Segler did not represent to A. W. Langston that the price for the equipment would include a premium for fire insurance policy on said equipment. (6) Plaintiff did not agree with defendant A. W. Langston that the plaintiff would carry a policy of fire insurance on the equipment. (7) L. A. Langston did not refuse to buy the equipment prior to the time A. W. Langston signed the contract in evidence. (8) L. A. Langston agreed to pay the plaintiff for the equipment described in such contract.

The trial court denied the motion of plaintiff for judgment against L. A. Langston on the above jury findings, and entered judgment non obstante veredicto that plaintiff take nothing against defendant L. A. Langston; and on the court's own motion, it appears, entered final judgment for said plaintiff against A. W. Langston for $575.67 and for "foreclosure of its mortgage upon the merchandise set out in said mortgage".

The action of the lower court in favor of L. A. Langston, notwithstanding the jury findings, was tantamount to a directed verdict at the close of the testimony, under Art. 2211, R.S., Vernon's Ann. Civ.St. art. 2211, upon the theory that there was no evidence, direct or circumstantial, before the jury as to A. W. Langston's authority to bind L. A. Langston; or as to the latter's approval of the purchase in question. Consequently, it is our duty to view the testimony bearing on the above issues in the light most favorable to plaintiff, as we consider the adverse judgment from which this appeal has been prosecuted.

The following facts adduced on the trial are therefore summarized: L. A. Langston owned the one-story building in November, 1935, operating a grocery store therein, with an oil and gas station in connection. A. W. Langston, his son, worked in the store on a salary, also waiting on customers in the filling station; the sign at the front reading "Langston Grocery Store". The equipment in suit was delivered to the store and remained there from the time of sale until destroyed by fire in April, 1936. Plaintiff's salesman, W. H. Segler, testified that in the latter part of November, 1935 he went to the Langston store with a view of selling the refrigerator case and was referred to L. A. Langston by the son, A. W. Langston; the elder defendant being first talked to and then, in the course of several visits, talking to both father and son; that L. A. Langston

went with plaintiff's said salesman to where the refrigerator was located and looked the same over generally, later asking Segler if he thought the meat business would be profitable; that in company with both the Langstons, Segler had measured off the rear of the one-room store to see if the refrigerator would fit the space there available. It was further testified by Mr. Segler that on the day the contract was signed, L. A. Langston had stated that he would buy the refrigerator at a certain price, and had been talking to the elder Langston further on the subject in the presence of young Langston just before the actual signing of the contract. Said witness stated that he finally asked L. A. Langston if he was going to take the refrigerator that he had looked at; whereupon, both defendants left the store for a few minutes' talk, the son coming back into the store and the father standing in the doorway. L. A. Langston then said, according to Segler, "I believe we can get together. I am going to leave this with A. W. Whatever A. W. does will be alright with me". L. A. Langston then left and after a short discussion as to price and terms the contract was agreed upon. Segler's testimony was that, upon his inquiry as to the persons operating the business, A. W. Langston replied: "It is just L. A. Langston and myself, A. W. Langston", and that it made no difference whose name was put in the contract; whereupon, A. W. Langston's name was inserted. Segler further stated that the matter of protecting the equipment in the fire policy of L. A. Langston was brought up, and that the written notice to the Fire Insurance Company of plaintiff's interest in the equipment was signed "L. A. Langston, by A. W. Langston"; who also told Segler (as this witness testified) that he and his father were in business together, both writing checks on the same account. A check for the down payment of $50 to plaintiff's salesman was given by A. W. Langston, signing it "L. A. Langston" which was honored by the bank on which it was drawn. A sausage mill was sold to L. A. Langston on the same day for $20, according to Segler, the check therefor being signed "L. A. Langston" by the son. The account at the bank stood in the name of L. A. Langston, who admitted that A. W. Langston drew checks on the bank, signing his father's name on various other occasions when told to do so. A total of $151.72 was paid on the contract. All checks introduced in evidence and in payment on the above transactions bore in the lefthand corner the words "for A. W. Langston"; there being circumstances, however, tending to indicate that such wording was added after the checks were cashed by the bank.

On the bottom of a notice dated March 24, 1936, from plaintiff's home office, addressed to A. W. Langston, Wright City, Texas, was the following:

"Your agent sold this mashine at one price and fild out the contract at another. he promist me to come back and fix it but he has never come back and I am a going to pay what I promist for it and that is all. he has charged about $35.00 more than he mad the trade for. I thought he would come back like he promist but he has not. I have got witness to prove that he did. I did not aim to wright about this. he promis to come bak and fix it up and he did not. An oblige. L. A. Langston".

A handwriting expert testified that both the above statement and signature were in the handwriting of L. A. Langston, which was denied by the latter, who said that he had told his son to write and sign such a letter; which was corroborated by A. W. Langston.

L. A. Langston denied buying the equipment or authorizing anyone to buy it for him; both defendants asserted that the son was about to get married and go into business for himself, borrowing the money to buy said refrigerator case and other articles necessary to operate a butcher shop on the premises, each defendant keeping separate accounts, books, looking after his individual business, and with no interest in the affairs of the other; the son testifying that he paid back to his father and others all sums borrowed. It was further the testimony of L. A. Langston that he had positively and finally refused to buy the equipment, whereupon the salesman Segler inquired if A. W. Langston would be interested for the independent purpose just stated. One of the witnesses for defendants (W. A. Wilkinson) employed by a wholesale grocery company testified that he had sold groceries in the store to both defendants, always making the charge to L. A. Langston; and the latter had told the witness that, in his absence, it was alright to sell to A. W. Langston (who was in the store much of the time selling groceries) and charge the same to the father's account. L. A. Langston's genuine signatures and several sentences of the language

and wording of the March 24th letter, above, were in evidence before the jury for a comparison of the spelling and handwriting of this defendant; similar writings and signatures being introduced as to the son.

■ We have set forth a full, but not a complete, digest of the facts and circumstances from which, as appellant contends, fact questions are raised as a basis for the answers of the jury to the issues submitted. We find ample support for the verdict on the matters of fact considered by the jury, and conclude that the trial court erred in rendering judgment non-obstante veredicto for the defendant L. A. Langston; as a peremptory instruction for this defendant at the close of the testimony would clearly have been improper. For instance, the defendants' testimony in the main was from interested parties, precluding peremptory action by the court. The statement of the elder Langston, properly before the jury as a part of plaintiff's testimony in chief, that "I believe we can get together. I am going to leave this with A. W. Whatever A. W. does will be alright with me", was alone sufficient for the jury issues appropriate to agency and the answers thereto. Similarly, there were sufficient facts and circumstances before the jury, even without Mr. Weaver, the handwriting expert, to determine who wrote and signed the statement to plaintiff on March 24, 1936, on the issue of approval and acquiescence in the purchase as made; this being one of the frequent cases where the jury's province includes a decision upon genuine signatures and handwriting by the well settled method of comparison, as to which the testimony of the expert was only corroborative.

■ Even, if we be mistaken in our conclusion of there being competent evidence before the jury to sustain our findings of express authority on the part of the son to act in behalf of L. A. Langston, yet there remained the issue of apparent authority under plaintiff's pleading and evidence, in view of the particular circumstances under which the Langston Grocery Store was operated. The court's charge made conditional this alternative issue of the plaintiff; and the later action of the court, in ignoring the jury's answers based on express authority, deprived the plaintiff of a finding on such theory of its cause of action. Appellant's proposition No. 5 relative thereto is correct.

■ Appellee emphasizes the point that the combined purchase contract and mortgage was "in the singular and signed only by A. W. Langston and a witness requested to sign only as a witness to the signature of A. W. Langston and said mortgage is nowhere signed by L. A. Langston; and when plaintiff writes concerning said account it only addresses 'A. W. Langston', and at no time refers to L. A. Langston, this is self-evident that plaintiff had only in mind A. W. Langston, the person to whom the sale was made and the only person signing the chattel mortgage". Appellee's further contention is that the sales and mortgage contract was in the nature of a negotiable instrument, precluding liability of anyone not a signer thereof. This contract does not comply with subd. 4, sec. 1 and sec. 5 of Art. 5932, R.S., N.I.A., and is a non-negotiable paper; partaking more of the complexion of an automobile sales contract, as illustrated in Blackwell v. General Motors Acc. Corp., Tex.Civ.App., 54 S.W.2d 251.

■ While the name of the elder Langston nowhere appears on the written agreement for the equipment in question, yet the facts and circumstances in the record fully raise jury issues of a sale to A. W. Langston, acting for and on behalf of an undisclosed principal. Acts done in an agent's own name, with no intention to bind his principal, cast no liability on the latter. However, the facts in the case at bar, unquestionably, raise issues of whether A. W. Langston was himself a principal, or was an agent acting on behalf of another. True, both defendants positively deny that the younger Langston was in any sense an agent in the particular deal, but this is not conclusive. The following excerpt from Daugherty et al. v. Wiles, Tex.Com.App., 207 S.W. 900, is especially relevant to the 379 page record before us [page 901]: "In many cases, agency arises, not from the use of express language, nor from the existence of a well-defined relation, but from the general conduct of the parties. If relations exist which constitute an agency, the agency exists, whether the parties so understand it or not". The situation here being that of an undisclosed principal, the following rule of law is deemed applicable: "Where the question of the liability of a principal or agent arises in applying the doctrine of undisclosed principal, the inquiry must be to whom was the credit knowingly given according to

414

the understanding of the parties, the same question being determined by the circumstances of the transaction and the conduct of the parties. Nelson v. Monroe Automobile & Supply Co., 156 So. 293, 180 La. 245". See 3 C.J.S., Agency, § 232, note 78 and authorities.

Appellees' cross-assignment, involving objections to the court's charge, and all counter propositions, are overruled; the assignments and propositions of appellant are sustained. No recovery was sought by appellant against defendant A. W. Langston, either here or in plaintiff's form of judgment submitted to and refused by the trial court. The jury findings, being well supported by evidence as to the remaining defendant, the judgment of the trial court will be reversed and here rendered on the jury verdict for appellant, the McCray Refrigerator Sales Corporation, against defendant L. A. Langston, for $576.67, with interest at six percent from October 18, 1937, until paid; and that it take nothing as to the defendant A. W. Langston.

Reversed and rendered.